IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN LESTER SALAZAR,

    Plaintiff,

vs.                                                        CIV No. 00-841 JP/WWD

DANIEL P. SEAGRAVE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Daniel P. Seagrave filed a Motion for Summary Judgment ("Motion") on May 17, 2001 **[Doc. 47]**. In evaluating Plaintiff's claims against Defendant Seagrave, the Court reviewed Defendants' Martinez Report ("MR"), filed August 10, 2001 **[Doc. 66]** and Plaintiff's Response to Defendants' Martinez Report, filed August 30, 2001 **[Doc. 71]**. The Court, having reviewed the materials submitted by the parties and the relevant authorities, finds that Defendant's motion should be granted as to Plaintiff's claims of unconstitutional restriction of visitation, but denied as to Plaintiff's excessive force claim.

Plaintiff ("Mr. Salazar") is incarcerated and is proceeding *pro se*.[1] During his detention at Bernalillo County Detention Center ("BCDC"), Plaintiff was admitted to Las Vegas Medical

---

[1] Mr. Salazar was a pretrial detainee when the events at issue occurred.

1

Center Forensic Unit ("LVMC") for two months for a competency evaluation.[2] Defendant Daniel P. Seagrave ("Dr. Seagrave") is a clinical neuropsychologist and was the director of the Forensic Division at LVMC during the events at issue. See Aff. of Seagrave, Ex. C, attached to Def.'s Mot. Mr. Salazar's allegations against Dr. Seagrave are set forth in Claim II and Claim III of the complaint. The claims do not specify which of Mr. Salazar's constitutional rights were violated, although if liberally construed, the allegations appear to state Due Process claims related to improper restriction of visitation privileges and use of excessive force.[3] Mr. Salazar alleges in Claim II that Dr. Seagrave denied visitation privileges to Mr. Salazar during Mr. Salazar's hospitalization at Northeast Regional Hospital ("NERH"). See Compl. at 4. Mr. Salazar alleges in Claim IV that on September 1, 1998, he "was beaten down by Dr. Seagrave . . . . [and] carried with violant [sic] force[] into the 'STU [Secure Treatment Unit] Cell.'" Id. at 5.

## Standard

Summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[2] Dr. Seagrave determined that Mr. Salazar was competent to stand trial or enter a plea. See Forensic Psychological Evaluation, Ex. B at 234, attached to Def.'s Mot. Dr. Michael Gzaskow found Mr. Salazar to be uncooperative during his stay at LVMC with "significant malingering" noted by the staff. See Psychiatric Discharge Summary, Ex. AA, attached to Defs.' MR at 221.

[3] In his Motion, Dr. Seagrave addressed Mr. Salazar's visitation allegations as a claim of retaliation in violation of the First Amendment. However, I find that Mr. Salazar's allegations do not state and his evidence does not support a valid retaliation claim under the First Amendment. See, e.g., Murray v. Albany County Board of County Commissioners, 211 F.3d 1278 (10th Cir. 2000) (unpublished opinion), 2000 WL 472842, **1 (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)) (explaining that even under a liberal construction, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"). Thus, to the extent that Mr. Salazar purports to present a retaliation claim under the First Amendment, that claim will be dismissed.

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In applying this standard, "we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

*Restriction of Visitation Claim*

From July 30, 1998 until August 5, 1998, Mr. Salazar was hospitalized at Northeast Regional Hospital ("NERH") where he underwent an appendectomy and an umbilical hernia repair.[4] See Ex. H, attached to Defs.' MR at 113. Mr. Salazar apparently alleges that his rights were violated when Dr. Seagrave denied visitation privileges while Mr. Salazar was hospitalized at NERH. The Tenth Circuit is in agreement with "the weight of present authority [which] clearly establishes that there is no constitutional right to contact visitation." Ramos v. Lamm, 639 F.2d 559, 580 n.26 (10th Cir. 1980). However, in evaluating whether a challenged condition violates a pretrial detainee's rights under the Due Process Clause of the Fourteenth Amendment, the Court "must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Block v. Rutherford, 468 U.S. 576, 583-84 (1984) (quoting Bell v. Wolfish, 441 U.S. 520, 538 (1979)).

Dr. Seagrave stated that his decision to deny Mr. Salazar's visitation privileges at NERH "was [made] in the best interest of Mr. Salazar, NERH staff, and LVMC staff at the NERH," and was "based on [a] concern for safety/security." Aff. of Seagrave, Ex. J, attached to Defs.' MR. More specifically, Dr. Seagrave contended that "the lack of security at NERH would significantly increase

---

[4] It was noted on Mr. Salazar's return to LVMC that he had a normal laparoscopy and that a normal appendix was removed. See Ex. C, attached to Defs.' MR at 50.

3

the risk of Mr. Salazar obtaining contraband" and that "the risk of elopement[5] at NERH was more significant when poorly unscreened [sic] visitors are allowed to visit." Id. The United States Supreme Court indicated that maintaining the internal security and safety of detention facilities, preventing the introduction of contraband, and reducing the risk of escape attempts are all legitimate governmental interests. See, e.g., Block, 468 U.S. at 586-87. Thus, Dr. Seagrave's apparent concerns for the security of personnel, the introduction of contraband, and the risk of escape are legitimate interests.

Mr. Salazar asserts that "Plaintiff was denied visitation rights as punishment." Pl.'s Mem. in Opp'n of Def.'s Mot. at 7. However, Mr. Salazar's bald assertion is not valid evidence that Dr. Seagrave's motivation was punitive. Finding no evidence of a punitive purpose, the Court must determine if Dr. Seagrave's denial of Mr. Salazar's visitation was reasonably related to the legitimate governmental interests expressed in his affidavit. In evaluating whether a restriction is reasonably related to such interests, a court must ordinarily defer to the expert judgment of prison officials, unless there is "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations." Block, 468 U.S. at 584-85 (citing Bell, 441 U.S. at 540-41)); see also Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982) (expressing deference for the decisions of "appropriate professionals" within the context of a mental health facility). Furthermore, "[t]he existence of less restrictive alternatives is not dispositive of the matter." Ramos v. Lamm, 639 F.2d 559, 580 (10th Cir. 1980). Considering the evidence in light of these principles, I am persuaded that Dr. Seagrave's restriction of Mr. Salazar's visitation privileges at NERH did not rise to the level of a constitutional violation.

---

[5]     Although "elopement" is not defined in Dr. Seagrave's affidavit, I assume from its context that the term refers to an escape with the assistance of a visitor.

In restricting Mr. Salazar's visitation privileges, Dr. Seagrave did not impose a blanket ban on Mr. Salazar's communications with persons outside of the facility. The evidence indicates that while Mr. Salazar was hospitalized at NERH, Dr. Seagrave authorized Mr. Salazar to receive telephone calls in accordance with LVMC policy. The evidence indicates that Mr. Salazar received visitors both before and after his hospitalization at NERH. Thus, Mr. Salazar's visitation rights were curtailed for no more than a week. See Bell v. Wolfish, 441 U.S. 520, 552 (1979) (finding that a limited time period is an influential factor in considering the constitutionality of a condition imposed on pretrial detainees). Mr. Salazar denies that he posed a safety or security risk and contends that Dr. Seagrave's decision to restrict visitation was not reasonable. Nevertheless, the Court must defer to Dr. Seagrave's professional judgment unless substantial evidence indicates that his response to legitimate concerns was overexaggerated. Mr. Salazar fails to point to such evidence. Accordingly, I find that Dr. Seagrave's denial of Mr. Salazar's visitation privileges at NERH did not violate Mr. Salazar's rights under the Due Process Clause and summary judgment will be granted in Dr. Seagrave's favor on this claim.

*Excessive Force Claim*

Because Mr. Salazar was a pretrial detainee, the Eighth Amendment is not applicable and his excessive force allegations must be examined within the context of the Due Process Clause. See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (holding that the Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment); Bell, 441 U.S. at 535-37 (holding that the Due Process Clause does not permit the government to subject pretrial detainees to punitive conditions). However, even though the Eighth Amendment does not apply to pretrial detainees, they retain at least the same constitutional rights as enjoyed by convicted prisoners. Bell,

5

441 U.S. at 545. As previously noted, the dispositive inquiry is whether the challenged practice or policy constitutes punishment or is reasonably related to a legitimate governmental objective. Block, 468 U.S. at 583-84 (citing Bell, 441 U.S. 520 (1979)).

Mr. Salazar and Dr. Seagrave offer conflicting accounts of the events that transpired with respect to Mr. Salazar's placement in an STU cell on September 1, 1998. In his verified complaint, Mr. Salazar alleged that on September 1, 1998, in a doctor's office, "Dr. Seagraves and several other staff members began to verbaly [sic] abuse" him and "acted with [i]mproper [m]otives and [i]ntent to [c]ause [g]reat [b]odily harm . . . includ[ing] violence, threats and intimidation[]." Compl. at 5. Mr. Salazar stated that he "was beaten down by Dr. Seagrave . . . .[and] Dr. Seagrave and three psych. tech's [sic] carried [him] with violant [sic] force[] into the STU cell." Id.

In his response and affidavit,[6] Mr. Salazar described his version of the incident in more detail. Mr. Salazar stated that Dr. Seagrave became upset, pointed his finger at him and began cursing, yelling and screaming. Pl.'s Resp. at 7; Aff. of Pl., Ex. A, attached to Pl.'s Resp. Dr. Seagrave allegedly made the following statements to Mr. Salazar: "You ---- up;" "You better get straight and tell us what you did with the money;" "We know Julie Altwise the prosecutor;" "We will destroy you." Aff. of Pl. Mr. Salazar denied raising his voice or pointing at Dr. Seagrave, and stated that feeling "overcome . .

---

[6] Dr. Seagrave correctly points out that although Mr. Salazar's affidavit is signed, dated and witnessed (apparently by his parents), it is not sworn. However, the Court must treat Mr. Salazar's verified complaint as an affidavit and consider the statements contained therein. See Gonzalez-Liranza v. Naranjo, 211 F.3d 1278 (10th Cir. 2000), 2000 WL 488476, **2 (citing Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991)); Green v. Branson, 108 F.3d 1296, 1201 n.1 (10th Cir. 1997). Moreover, the Tenth Circuit has indicated that some unsworn statements are to be considered together with other evidence in determining whether a genuine issue of fact exists. See Sasa v. Zavaras, 166 F.3d 1222 (10th Cir. 1998) (unpublished opinion), 1998 WL 849764, **3 (discussing affidavits, an unsworn grievance form, a hearing tape and a verified complaint, then "[c]onsidering this evidence together [to] conclude there were genuine issues of fact").

6

.[he] fell to the floor in a kneeling position with his hands in a prayerful position, [and] begg[ed] . . . [to return] to his room." Pl.'s Resp. at 7. However, instead of allowing Mr. Salazar to return to his room, Dr. Seagrave and other staff members allegedly beat Mr. Salazar with their fists "until Plaintiff collapsed to the floor . . . . [and then] carried [Plaintiff] out of the room . . . hit[ting] [Plaintiff] with [their] fist[s]." Id.; Pl.'s Aff.

The next day Mr. Salazar "kept trying to show . . . his bruises" to a psych tech and stated that he "hurt all over [because] Dr. Seagrave beat me up . . . and threw me in the strip cell." Progress Note, Ex. I, attached to Defs.' MR at 130. Mr. Salazar also reported that "[t]hey threw me against a cement wall and beat me up. Dr. Seagrave . . . made all these bruises." Progress Note, Ex. I, attached to Defs.' MR at 132. On September 3, 1998, Mr. Salazar reported that he "was mistreated by staff for no reason and thrown into a strip cell and that Seagrave was an evil leader." Progress Note, Ex. I, attached to Defs.' MR at 133. Evidence indicates the presence of several bruises and/or abrasions on Mr. Salazar's body. See, e.g., Progress Note, Ex. I, attached to Defs.' MR at 131; Physical Assessment, Ex. V, attached to Defs.' MR at 164; Photo Sheet, Ex. W; Physician's Order Sheet, dated 9/9/98, Ex. BB, attached to Defs.' MR (noting Mr. Salazar has "old, ~ 10-7 day resolving hematomas"). Mr. Salazar's allegations, if true, sufficiently state an excessive force claim under the Due Process Clause.

The evidence presented by Dr. Seagrave tells a very different story. In his affidavit, Dr. Seagrave asserts that he and Rick McGahie met with Mr. Salazar in order "to discuss our belief that Plaintiff was malingering." Aff. of Seagrave, Ex. C, attached to Def.'s Mot. When Dr. Seagrave returned to the room after stepping out to answer a page, "Mr. Salazar began yelling and screaming." Id. Dr. Seagrave alleged that Mr. Salazar "refused to calm down and began moving toward me and

waving his finger in my face." Id. Finally, because of this conduct, Dr. Seagrave informed Mr. Salazar that he had to go to the STU. Id. Dr. Seagrave contends his decision to place Mr. Salazar in the STU was based on his professional opinion that Mr. Salazar was a threat to himself and others. Id. When Mr. Salazar refused to go to the STU, Dr. Seagrave "ordered LVMC staff members to use Crises Prevention Institution ("CPI") techniques to deescalate the situation and carry the patient to the STU." Id. Mr. Salazar "was struggling and kicking" and Dr. Seagrave helped to hold Mr. Salazar's legs. Id. According to Dr. Seagrave, Mr. Salazar "continued to struggle, including kicking and biting at staff" as he was transported to the STU. Id.

Dr. Seagrave provides the affidavits and statements of at least five other witnesses to the events at issue. See Aff. of Marquez, Ex. D, attached to Def.'s Mot.; Aff. of Rodriguez, Ex. E, attached to Def.'s Mot.; Incident Rep. by Ortega, Ex. K, attached to Defs.' MR at 140; Voluntary Statement Form ("VSF") of Coca, Ex. S, attached to Defs.' MR at 158; VSF of McGahie, Ex. T, attached to Defs.' MR at 161. Although some details of the stories vary, these statements generally corroborate Dr. Seagrave's version of events. Specifically, all of the witnesses noted that Mr. Salazar was upset, uncooperative, screaming, yelling, and/or crying. At least two witnesses observed Mr. Salazar make "threatening gestures" or point or wave his finger at Dr. Seagrave. See Aff. of Rodriguez; VSF of McGahie. Several witnesses stated that staff members attempted to calm Mr. Salazar without success. See Aff. of Marquez; Aff. of Rodriguez; VSF of Coca. All of the witnesses agreed that Mr. Salazar struggled while being carried to the STU. In addition, Dr. Seagrave points to evidence that Mr. Salazar may have self-inflicted some of his injuries. See Aff. of Quintana, Ex. G, attached to Def.'s Mot.; Statement of Frederick McGahie, Ex. T, MR 161. Dr. Seagrave asserts that any injuries resulting from Mr. Salazar's transfer to the STU are *de minimis* and not indicative of excessive force,

8

but rather are consistent with the type of injuries sustained by a person who resists being transported. Dr. Seagrave contends that under the circumstances a reasonable amount of force was used to ensure the safety of Mr. Salazar and LVMC staff.

The posture of this case is similar to that considered by the Court in Sasa v. Zavaras, 166 F.3d 1222 (10th Cir. 1998) (unpublished), 1998 WL 849764. The prisoner in Sasa alleged that several correctional officers used excessive force when "he was beaten without provocation" by one officer while other officers watched. Sasa, 1998 WL 849764, **1. The defendants in Sasa submitted affidavits indicating that the prisoner had provoked the officer and denying that the prisoner was beaten. Id. **3. The prisoner responded by denying that he had provoked the officer and attached a grievance form detailing his version of events. Id. The Court concluded that the evidence, taken together, created "genuine issues of fact that precluded the entry of summary judgment in favor of defendants." Id.

Similarly, Mr. Salazar here has shown a dispute of material fact which, when viewed in his favor, is sufficient to defeat Dr. Seagrave's motion for summary judgment on the claim of excessive force. The record provides "conflicting evidence concerning whether [Mr. Salazar] acted in any manner to prompt the . . . response by [Dr. Seagrave], [and] the extent of force used." Id. In addition, there are "genuine issues of fact concerning the extent of injury suffered by [Mr. Salazar]." Id. The conflicting evidence before the Court presents a credibility dispute that cannot be resolved through summary judgment proceedings. See Dorsey v. St. Joseph County Jail Officials, 98 F.3d 1527, 1529 (7th Cir. 1996). Accordingly, because material facts regarding Mr. Salazar's allegations of excessive force remain in dispute, summary judgment is not appropriate and will be denied on this claim.

***Qualified Immunity***

The question of qualified immunity is dependent on which view of the facts is accepted by the trier of fact. Thus, summary judgment based on Dr. Seagrave's qualified immunity defense must be denied at this time. See Davis v. Hill, 173 F.Supp.2d 1136, 1145 (D.Kan. 2001) (quoting Brandenburg v. Cureton, 882 F.2d 211, 215 (6th Cir. 1989 ); distinguishing Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001)). However, this finding in no way precludes Dr. Seagrave from renewing his immunity defense when the relevant factual disputes have been resolved by the fact finder. See id. n.9.

WHEREFORE,

IT IS ORDERED that Dr. Seagrave's motion for summary judgment is GRANTED on any claim that Dr. Seagrave's restriction of visitation privileges at NERH constituted retaliation in violation of First Amendment rights and on Mr. Salazar's claim that Dr. Seagrave's restriction of visitation privileges at NERH violated Dr. Salazar's rights under the Due Process Clause of the Fourteenth Amendment.

IT IS FURTHER ORDERED that Dr. Seagrave's motion for summary judgment is DENIED on Mr. Salazar's claim that Dr. Seagrave used excessive force in violation of Mr. Salazar's rights under the Due Process Clause of the Fourteenth Amendment.

_____
CHIEF UNITED STATES DISTRICT JUDGE