**IN THE UNITEDSTATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**



FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

05 JAN -6 PM 1:24

CLERK-ALBUQUERQUE

JOHN L. SALAZAR,
    Plaintiff,

Vs.                                                          CIV 00-841 JP/WDS

DR. DANIEL SEAGRAVE;
VINCE MARQUEZ; LIEUTENANT BELL;
DR. RICK McGAHIE; STEVE RODRIQUEZ;
And LIEUTENANT IVERSON,
    Defendant.

### PROPOSED FINDING OF FACTS AND CONCLUSIONS OF LAW

COMES NOW, the plaintiff, John L. Salazar, Pro Se, for himself and by himself respectfully submits this proposed finding of facts and conclusions of law and states as follows:

**A. Fact and Conclusion of Law**

1. The defendants state that they deny all the allegations against them, that the plaintiff is delusional pursuant to an incredible expert witness and that none of the events ever happened.

2. The Defendants' affirmative defense and as presented in their Motion for Summary Judgment that was filed on April 1, 2004 as to BCDC Defendants' was granted in part and denied in part and to LVMC was denied.



3. Indeed, by the following Plaintiff will show that the Defendants arguments are non-founded, without case law and without merit. That Plaintiffs continues to suffer because of the injuries, that all claims have merit and the Defendants prevented or thwarted Plaintiff's administrative remedies.

## B. Fact and Conclusion of Law- Administrative Remedies

1. BCDC Defendants have tried to insinuate and to try to dismiss Plaintiffs claims on an unsupported technicality that Plaintiff did not exhaust all of his administrative remedies. Plaintiff contends that he fully complied with the grievance procedures, but the BCDC officials lost, destroyed, did not follow proper policy procedure or otherwise failed to process Plaintiffs paperwork and interfered with Plaintiffs ability to exhaust his administrative remedies. Plaintiff presented affidavits and reference to the deposition transcripts and will if necessary present witness statements if there are any lingering questions as to exhaustion. For example Lester E. Salazar, Plaintiffs father, when it became apparent that the BCDC Jail was ignoring his attempts to grievance or remedy the abuse, had to set a meeting/conference/hearing with Mr. Sisneros, Major Donald Crutchfield, Major Cook, Dr. Seltzer and Plaintiff John L. Salazar on November 5, 1998 in Mr. Sisneros office to see the bruises on his son, to have his allegations heard and as to why nothing was being done to stop the attacks by guards and to Plaintiffs ignored complaints/grievances. Other

witness such as Attorney Steven Long had to come down to the jail to make sure Plaintiff was being seen by medical, Cheryl A. Ryerson had to continually write Roslyn from protection and advocacy to look into why the Jail was not responding the numerous complaints about Plaintiffs allegations, plaintiff had to with Plaintiff's families money go to an out side Doctor, Dr. Gehlert in order to get proper medical attention, the jails physicians then ignored Dr. Gehlert's prescription for physical therapy and a nonsteroidal medication, with letters written by the jails director to the Salazar's family that there was nothing that could be done about the complaints etc. Thus it appears that all administrative avenues were exhausted which left no alternative but to take it to court. Plaintiff had no other alternative but to go to court. Indubitably, the court ruled that the defendants failed "to demonstrate the absence of genuine issues of material fact on the issue of exhaustion of administrative remedies". See Celotex, 477 U.S. at 323; Simms, 165 F.3d at 1326 (movement must show absence of genuine issue of material fact). Now the trial has been split to present witnesses about exhaustion issues as a preliminary mater. The court has determined that plaintiff has "sufficient factual information in the exhibits to raise a genuine issue of a fact for trial on the issue of Plaintiff's exhaustion of administrative remedies as to all three incidents at BCDC". See Hoover vs. West, 2004 WL 309338, *3 (10th Cir. Feb 19,

2004)(unpublished)("Where prison officials prevent or thwart a prisoner from utilizing an administrative remedy, they have rendered that remedy 'unavailable' and a court will deem that procedure 'exhausted'"); Morris v. Eversley, 205 F. Supp. 2d 234, 240-41 (S.D.N.Y. 2002)(prison officials failed with procedures set forth in state law after inmate utilized informal channels); Miller v Norris, 247 F.3d 736, 740(8th Cir. 20019)(" a remedy prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy" under PLRA. Also," the failure [by prison officials] to respond to a grievance within the time limits continued in the grievance policy renders an administrative remedy unavailable," Jernigan, 304 F.3d at 1032. See also Lane v. Doan, 287 F. Supp. 2d 210, 212-13 (W.D.N.Y. 2003) (prison officials failed to respond to, or to process, inmate's grievances and written complaints); Liner v. Gourd, 310 F. Supp. 2d 550,553-54 (W.D.N.Y. 2004)(prison officials failed to comply with prison's own procedural requirements).

**B. FACTS AND CONCLUSTION OR LAW OR INCIDENTS AT THE LVMC ON SEPTEMBER 1/2,1998, BY DR.DANIEL PL SEAGRAVE, DR. RICK McGAHIE, VINCE MARQUES AND STEVE RODRUQUEZ AND ON SEPTEMBER 8,1998**

1. Plaintiff's claims of excessive force against the LVMC Defendants arise out of two alleged incidents at LVMC on September 1,1998 and on September 8, 1998.

2. Plaintiff states that he was verbally attacked, beaten down, handcuffed, carried out of an office, down a hallway, down

stairs and thrown into a lock down cell on the first incident. While Plaintiff was being carried the defendants administered blows with their fists onto Plaintiff and pushed his side into a doorframe scraping and cutting Plaintiffs side. Plaintiff recalls during the transporting, that was against CPI procedures, there were blows to his stomach and his side from Defendants Rodriquez who seemed to be angry, screaming at him almost demonically. Though defendants had complete control of Plaintiff, they continued to hit and beat Plaintiff for their own kicks. Defendant Rodriquez hit Plaintiff in the groin area and back area, as well as plaintiff legs and arms. Dr. Seagraves also participate in the hitting/carrying of Plaintiff, as did other staff that was involved in the transport.

3. Miguel Chavez, an advocate with the Protection and Advocacy, requested and investigation, testified in deposition and will testify that he saw plaintiff on September 3, 1998. Mr. Chavez stated that he "observed that [Salazar] had numerous bruises and abrasions to the upper body [and] had numerous bruises and abrasions to the upper body [and] Mr. Salazar's inner wrists were bruised and swollen (2x3 inch area), his left midchest area was bruised (1x3 inches area), and his right rib cage was bruised and swollen (4x6 inch area)." **"If proper CPI techniques were used I would not think that these many injuries would have been present."**

4. Photographs of Plaintiff taken by Sgt Robert R. Sanchez on September 8,1998 show large areas of dark bruises on Plaintiff's chest, arms, side, back, legs, knees, feet, toes and ankles as well as some swelling. These pictures were taken in the jail. The six or seven pictures taken by Lt. Van Sickler out in the parking lot, outside the jail in the sunlight, have not been produced to date. The witness Lt. Van Sickler admits to taking the pictures and that BCDC should have them. He also admits to old bruises and new bruises. Also, A Medical Discharge Summary as Defendant's Exhibit O indicates: "…I saw Mr. Salazar on the next day on September 2nd, 1998[this was Dr.Pembrook]… on examination of his skin, he had multiple bruises and subcutaneous hematomas as an appended note. He had an 8x5cm area of abraded skin over the right lateral aspect of the chest with much enduration and subcutaneous hematomas. He also had an abraded area with erythema over the radial aspect of the right forearm. He had smaller abrasions without indurations over the anterior lateral aspect of the left shoulder and there was another area of abrasion induration and subcutaneous hematoma over the medial aspect of the left forearm." He admits Plaintiff saw Dr. Rubio: "Later the same day September 2nd, 1998 at 3:05 in the afternoon I saw Mr. Salazar again…Dr. Rubio recommended 800 mg of Motrin q8h for 7 days and 21/2 to 5 mg of Lortab q6h as needed for five days only." This was not done by the LVMC. Also see Plaintiff's Exhibit 38: "Multiple complaints…L.R. work some

type of intervention by myself and LVMC… Chest with multiple abrasions and ecchymosis…areas, upper R…chest, shoulder & left shoulder…multiple contusions…Lortab 25mg T-TT per/q6h as needed for pain 5days…return patient../CL Rb". A physician's order sheet dated September 9, 1998, attached to a Martinez report, noted Mr. Salazar had "old, -10-7 day resolving hematomas" besides new abrasions, bruises, contusions as Plaintiff's Exhibits 89, 90 and 92: 5 multiple bruises to body and multiple Joint aches…25cm hematomas subcutaneous R…forearm, R side of chest at T10-L3 Level-12mc x 10cm resolving hematomas over lateral margin X scrapes over R toes)." On 9/10/98 a chart was entered indicating the same and more that was not covered on9/9/98. Also on 9/14/98 another Physician's Order Sheet: " Numbness & pain in R 4th & 5th fingers & L 1st, 2nd & 5th digits since cuffing & transport from Las Vegas, N.M. 1 wk ago…c/o numerous pains-chest ribs, L shoulder & lower back. States it all started pt "being beat up by CO's in Las Vegas 1wk ago."… ". Has numerous healing "yellow" color bruises over arm & chest…" These are a preponderance of evidence that these incidents happened on the dates and time alleged by Plaintiff. Plaintiff has Harry Monk as a witness that heard and saw the beatings, abuse and conspiracy by Defendants. Plaintiff has Doctors Reports, Mrs. Cheryl Ryerson/Salazar who saw John before and after the beatings and other creditable witnesses besides himself as a witness to state for the record that this indeed

-7-

did happen and what the short term and long range ramifications are and will be because of the Defendants actions.

Dr. Sam Roll will show that plaintiff continues to suffer from Post Traumatic Stress. That plaintiff experienced and not malingered or was delusional as to the events that happened at LVMC and BCDC. That plaintiff indeed experienced, and was confronted with all of the events at LVMC and BCDC that involved actual, and threatened death, and/or serious injury with threats to the physical integrity of himself (i.e. Rape, sexual assault, sexual gestures, cursing, beatings, long periods of time in segregation, back injuries from torture, tourniquet placed around neck to choke to death, paraded nude in front of women and men and more). Plaintiff's responses involved intense fear, helplessness and horror, with the traumatic events persistently experienced, over and over again and more. Will show that Dr. D'Voskin did not do a proper evaluation. Thus, the injuries, trauma and Psychological reactions were real and did happen and amounted to real physical injury and Psychological problems on a long-term basis. See Mitchell v. Horn, 318 F.3d at 535-36 ("we do not adopt a test that would prevent those experiencing real physical injury at the hands of government official from pursuing their rights") See Whitley v. Albers, 475 U.S. 312, 319-22 (1986)(unnecessary and wanton inflection of pain violates 8th Amendment); Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th cir. 1990)(8th Amendment includes duty to protect prisoners

from excessive force). Also Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1998) Even though pretrial detainees are not protected by the 8th Amendment, they retain at least the same constitutional rights as those enjoyed by convicted prisoners. Bell v. Wolfish, 441 U.S. 520 545 (19979) Also Penrod v. Zavaras, 94 f.3d 1399, 1405-06 (10th Cir. 1996). "Deliberate indifference" may be shown by the official's active personal participation, or by his knowing acquiescence in the constitutional violation. See Holland v. Harrington, 268 F.3d 1179, 1187 (10th cir. 2001). It must be noted that these defendants have been denied Summary Motion on two occasions once in 2002 and recently on October 27, 2004 "…Defendants' Motion for Summary Judgment, the Court will deny summary judgment for the LVMC Defendants on this ground." It must also be noted that Plaintiffs back went out Monday December 13, 2004 by late after noon had to make and Appointment with a therapist Diane Martinez-Hursh Doctor of Oriental Medicine and Message/Physical Therapist. After receiving therapy twice, Dr. Hursh has recommended that I go to a Chiropractic Physician and recommended Dr. Michel Pendleton. Lisa Snyder Physical Therapist from the Los Lunas Prison has also recommended therapy equipment for my back, arm and leg injuries. These injuries were from the beatings at LVMC and BCDC. Mr. Olivas called me several days ago and disused with me since any new discover because of ongoing Physical and mental problems will have to be sent to the

defendants. I have made a copy of a Picture showing you how my back goes out prior to meeting with Dr. Hursh and copies of the business cards. Dr. Hursh will be available for testimony if it is not too late. In any event this helps to substantiate the long-range effects of Defendants actions.

**C. FACT AND CONCLUSION OF LAW OF INCIDENTS AT THE BCDC JAIL ON 10/28/98 AND 10/29/98 BY DEFENDANTS LT. BELL AND LT. IVERSON**

1. Plaintiffs medical records from October 28, and 29 at 10:45 a.m. 1998 indicate that of "no treatment" but after Plaintiff complained that the prison was trying to cover up and were not doing anything to help him, it was then that Steve Long had to come to the Jail to make sure something would get started properly with medical. Then the following transpired:

   a. Another medical personale completed a Physician's order sheet showing " PTSD, depression, degenerative bones…Pt.

   b. Restrained Handcuffed and shackled, patient striped and placed in cell 3 Pt, face pale, tenderness about and oriented, note multiple scratches, abrasions and compounding bruises. Abrasions to knees and torso and face. Pt malformed deformity instability or cryptic to palpates p-c billet gaps & pulses to all extremities R Set tissue 137 pss now… then a chart indicating injuries…"

c. Then on 10/30/98 at 0930 Plaintiff was seen again by medical staff as reflected in a Physicians Order Sheet and Steve Long having to be there to make sure everything was being documented because nothing was being done indicative of: multiple abrasions to ® bicep area ® wrist... noted ecchymosis, multiple abrasions noted to (L) wrist bruising noted to... medial edges and bruising noted to webbing between 1st and 2nd digit of L hand, (L) wrist guarded on initial retraction & unable to oppose (L) thumb to... abrasions noted to (L) hand 2nd 3rd digit cap refill <2sec bilateral and ulnar radial pulses, <u>equal bilateral abrasions noted to lumbar area of back</u>, abrasions noted to bilateral pleural surfaces, ecchymosis noted to lateral edge of knee ... (L) rib pain...ankle knee noted with difficulty weight baring w difficulty BS present X 4 quads..." <u>and prescribed 200 mg of Advil for 5 days... gauze to multiple abrasions until healed. Warm showers...to areas Pt placed in shower..."</u>

d. It must be noted that Dr. Seltzer did not want to place Plaintiff into 3 S East and numerous times put in requests or accepted request to move Plaintiff, but BCDC officers did not want to let Plaintiff out. Also numerous complaints were made

-11-

to Roslyn form Protection and Advocacy by Plaintiff, Plaintiff's Parents Lester E. Salazar and Rebecca J. Salazar and Cheryl A. Ryerson. Complaints were made also to Mr. Sisneros and Mayor Baca. Because nothing was being done for Plaintiff even after a meeting/conference/hearing with Mr. Sisneros, Major Crutchfield, Major Cook, Lt. Iverson and Dr. Seltzer that Plaintiff had to be taken to an out side Doctor, Dr. Rick J. Gehlert, M.D. Dr. Gehlert: "… anxiety attacks… October 28 & 29th 1998…multiple contusions about the trunk upper extremities…complaints of bilateral shoulder pain, rib pain and low back pain since these attacks." Pl. Ex. G. Dr. Gehlert's examination revealed "ecchymosis" (bruising) and pain aground the front rib cage area, with "significant pain over his left AC joint and limited active motion of both shoulders of about 90 degrees with significant pain." Also other medical reports stated the same. Also, there was "some Para spinal pain on the right side of his lumbar spine. Dr. Gehlert prescribed physical therapy and ' an appropriate nonsteroidal" that was never given to Plaintiff by the Jail doctor, Dr. Mason. Plaintiff's ex-wife, Cheryl Ryerson, testified under deposition: "I had noted

in BCDC that one of the medical assistants brought it to the attention of the Physician that there was something going on, desperately going on." Also, Ms. Ryerson alluded to a jail visit by Steve Long who reported that Plaintiff was pretty "beat up." Plaintiff was neither sent to the hospital nor given painkillers or aspirin though it was prescribed to him. Thus there is substantial evidence and the perponperous of the evidence to prove that plaintiff was beaten on these dates. Compounded with the testimony of Ted Rios and Fidel Pacheco that saw and heard the abuses on 10/29/98 "they carried him Nude, handcuffed and shackled with a gray blanket wrapped around his neck like an animal..."

Dr. Sam Roll will show that plaintiff continues to suffer from post Traumatic Stress. That plaintiff experienced and not malingered or was not delusional as to the events that happened at LVMC and BCDC. That plaintiff indeed experienced, and was confronted with all of the events as LVMC and BCDC that involved actual, and threatened death, and/or serious injury with threats to the physical integrity of himself (i.e. Rape, sexual assault, sexual gestures, cursing, beatings, long periods of time in segregation, back injuries from torture, tourniquet placed around neck to choke to death (i.e. 'we are going to kill you'),

paraded nude in front of women and men and more). Plaintiff's responses involved intense fear, helplessness and horror, with the traumatic events persistently experienced, over and over again and more. Will show that Dr. D'Voskin did not do a proper evaluation. Thus, the injuries, trauma and Psychological reactions were real and did happen and amounted to real physical injury and Psychological problems on a long-term basis. See Mitchell v. Horn, 318 F.3d at 535-36 ("we do not adopt a test that would prevent those experiencing real physical injury at the hands of government official from pursuing their rights") Bell v. Wolfish, 441 U.S. 520 545 (19979) Also Penrod v. Zavaras, 94 f.3d 1399, 1405-06 (10th Cir. 1996). "Deliberate indifference" may be shown by the official's active personal participation, or by his knowing acquiescence in the constitutional violation. See Holland v. Harrington, 268 F.3d 1179, 1187 (10th cir. 2001). It must be noted that these defendants have been denied Summary Motion in part as to June 12, 1998, but not as to 10/28/98 and 10/29/98, on October 27, 2004 "…Defendants' Motion for Summary Judgment, the Court will deny summary judgment for the BCDC Defendants on this ground." It must also be noted that Plaintiffs back went out Monday December 13, 2004 by late after noon had to make and Appointment with a therapist Diane Martinez-Hursh Doctor of Oriental Medicine and Message/Physical Therapist. After receiving therapy twice, Dr. Hursh has recommended that I go to a

-14-

Chiropractic Physician and recommended Dr. Michel Pendleton. Lisa Snyder Physical Therapist from the Los Lunas Prison has also recommended therapy equipment for my back, arm and leg injuries. These injuries were from the beatings at LVMC and BCDC. Mr. Olivas called me several days ago and disused with me that any new discover because of ongoing physical and mental problems will have to be sent to the defendants. I have made a copy of a Picture showing you how my back goes out prior to meeting with Dr. Hursh and copies of the business cards. Dr. Hursh will be available for testimony if it is not too late. In any event this helps to substantiate the long-range effects of Defendants actions. See Whitley v. Albers, 475 U.S. 312, 319-22 (1986)(unnecessary and wanton inflection of pain violates 8th Amendment); Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th cir. 1990)(8th Amendment includes duty to protect prisoners form excessive force). Also Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1998) Even though pretrial detainees are not protected by the 8th Amendment, they retain at least the same Constitutional rights as those enjoyed by convicted prisoners.

### STATEMENT OF DESPUTED FACTS

All remaining facts remain disputed as to the events at the LVMC on September 1, 1998 and September 8, 1998 and the events at the BCDC Jail on October 28 and October 29, 1998 against all defendants and those who helped them as descried above and in

Plaintiff's exhibits and witnesses. Plaintiff needs to have some witnesses transported from prisons to the court. See Transport Motions and proposed orders and letter of current evidence of long-term injuries.

Respectfully Submitted,

*John L. Salazar*
John L. Salazar
1600 Escalante, S.W.
Albuquerque, N.M. 87104

I hereby certify that a
True and correct copy of this
Statement of Facts and Conclusion of
Law was mailed to following on January 7, 2005:

Sean Olivas, Atty.
P.O. Box AA
Albuquerque, N.M. 87103

Patrick D. Allen, Atty.
P.O. Box 2644
Albuquerque, N.M. 87125-6447

Dated this 1/7/2005

By: *John L. Salazar*
1600 Escalante S.W.
Albuquerque, New Mexico, 87104
(505) 247-8370
John L. Salazar