**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

JOHN LESTER SALAZAR,

                                                      CIV-00-841 JP/WDS

              Plaintiff,

v.

DR. DANIEL P. SEAGRAVE;
RICK McGAHIE; STEVE RODRIGUEZ;
VINCE MARQUEZ; LIEUTENANT BELL;
and LIEUTENANT IVERSON,

              Defendants.


**DEFENDANTS DR. DANIEL P. SEAGRAVE, RICK MCGAHIE,**
**STEVE RODRIGUEZ, and VINCE MARQUEZ'**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**WITH CITATIONS TO THE TRIAL RECORD**

COME NOW Defendants Dr. Daniel P. Seagrave, Rick McGahie, Steve Rodriguez, and

Vince Marquez ("LVMC Defendants") and, subsequent to a trial on the merits, respectfully

submit their Requested Findings of Fact and Conclusions of Law, with citations to the trial

record transcript (TR), as follows:

**I.  FINDINGS OF FACT**

1.      Plaintiff was admitted to the Forensic Evaluation unit of the Las Vegas Medical

Center ("LVMC") on July 14, 1998 pursuant to a court order by the Honorable Richard J.

Knowles for a comprehensive forensic evaluation to determine his competency to stand trial, to

enter a plea and for clinical recommendations for future treatment.  (TR 718:10-24; LVMC

Exhibit D)

2.      Plaintiff was facing twenty-five (25) counts of racketeering, fraud, forgery, and embezzlement arising out of his operation of Crestview Funeral Home.

3.      The Las Vegas Medical Center staff found Plaintiff to be uncooperative during testing, and feigning mental illness.  However, the staff found him to be cogent and responsive when issues dealt with personal, family, or legal matters.  (TR 726:5 through 728:13; LVMC Exhibits E and G)

4.      On September 1, 1998, Plaintiff met with Dr. Seagrave, a psychologist at LVMC, and Rick McGahie, a contract evaluator, to discuss their belief that he was malingering or lying about his psychological problems.  (TR 735:13-20)

5.      Plaintiff became angry and started yelling, calling Dr. Seagrave "evil".  Plaintiff would not join the discussion but continued to escalate by yelling and kneeling on the floor.  (TR 739:19-25)

6.      Dr. Seagrave attempted to de-escalate the situation by leaving the room.  (TR 740:7-14)

7.      Upon returning to the room, Dr. Seagrave observed Plaintiff lying in a fetal position.  (TR 741:20-21)

8.      Dr. Seagrave then re-entered the room, approaching Plaintiff in a non-threatening manner.  (TR 743:1-6)

9.      Plaintiff then began moving toward Dr. Seagrave waving his finger in his face in a threatening manner.  (TR 743:16-19)

10.     Due to Plaintiff's advancing toward Dr. Seagrave and his unwillingness to calm down, Plaintiff was informed that he would be placed in STU ("Secure Treatment Unit") for safety reasons.  (TR 743:19-25)

11.     Based on his professional opinion that Plaintiff was a threat to himself and LVMC staff members, Dr. Seagrave ordered staff to escort Plaintiff to STU at which time Plaintiff began to struggle.   Staff used the Crisis Intervention Technique ("CPI") to deescalate and escort Plaintiff.  Plaintiff continued to struggle until the STU door was closed.  (TR 18:13 through 23:6 and 743:16 through  758:14)

12.     Various staff members documented their observations of the September 1, 1998, incident.   Each and every report was consistent in that Plaintiff's refusal to go to STU voluntarily; that he struggled, that CPI techniques were used, and that Plaintiff was not abused.  (TR 484:9-18 and 491:4-9; LVMC Exhibits K, L, M, N, and S)

13.     On September 1, 1998, Plaintiff was not put into handcuffs or shackles during the trip to STU.  (TR 18:11-14, 673:15-23, 753:21-23)

14.     Plaintiff was not hit or struck in any way by any of the Defendants during the trip to STU.  (TR 18:4-10, 81:10-18, 755:6-9, 567:17-23, 821:4-6)

15.     On September 2, 1998, Plaintiff's mother contacted a patient advocate and complained of the treatment he had received during his transport to STU.  (TR 470:20-25)

16.     Plaintiff refused to complete a Voluntary Statement concerning the September 1, 1998 incident.  (TR 480:8-10)

17.     On September 2, 1998, LVMC investigator, Carmela Montoya, was notified of the incident by the patient advocate.  (TR 470:20-25)

18.     On September 2, 1998, Ms. Montoya instigated an internal investigation of the September 1, 1998, incident.  Ms. Montoya received all the documentation surrounding the incident, took photographs of Plaintiff on September 2nd and 3rd, and interviewed most of the participants.  The investigator found the following :

(a)     The investigator opined that Plaintiff <u>was not</u> physically abused while being transported to STU.  Plaintiff did sustain injuries in the struggle, but they were superficial and consistent with the documented struggle.   There was no swelling, bleeding, or skin break. (TR 491:4 through 492:15; LVMC Exhibits S and Z)

(b)     Her determination was based, in part, on Plaintiff's tendency to exaggerate his injuries.  (TR 489:21-23; LVMC Exhibits S and Z)

(c)     Ms. Montoya also noted that LVMC Nursing Assistant, Guadalupe Quintana, saw and reported Plaintiff scratching, hitting, and injuring himself before Defendants were aware of any charge of excessive force.  (TR 494:9-13 and 526:14-23; LVMC Exhibit S)

19.     On September 8, 1998, Plaintiff was ordered to be transferred back to BCDC due to his failure to cooperate with his evaluation.  (TR 836:2-4 and 729:3-22; LVMC Exhibit E)

20.     When the Sheriff's Deputies arrived to transport Plaintiff on September 8, he was resistant and did not want to come out of the toilet stall in the "B" wing unit.  The officers had to struggle with him.  Plaintiff wrapped his legs and feet around the  bathroom stall.  Plaintiff was naked.  The officers were able to put Plaintiff's long-john underwear on him and were then able to apply leg irons and handcuffs in order to transport him from LVMC.  (TR 417:20 through 422:4 and 451:1 through 453:23; LVMC Exhibits BB and CC)

4

21.     No Defendant was physically involved in the incident of moving Plaintiff from the LVMC commode to the van on September 8, 1998.  (TR 21:15-17, 421:8-15, AND 455:6 through 456:13; LVMC Exhibits BB and CC)

22.     Plaintiff completely fabricated Defendants' presence at the September 8, 1998, incident and, because of this and other misrepresentations by Plaintiff, Plaintiff has lost his credibility.  (TR 644:6-11 and 645:18-25; LVMC Exhibits BB and CC)

23.     Plaintiff's physical injuries on September 1, 1998, were due to his active and aggressive resistance during the transport to STU.  (TR 76:1-25, 491:21-23,  493:13-20, 614:23-25, 679:1-24, 686:5-11, 693:10-25, 696:1-5)

24.     No one but Plaintiff testified that any of the Defendants hit Plaintiff, even though Plaintiff claims that many people witnessed the force.

25.     Dr. Seagrave was acting as an arm of the court on September 1, 1998.  (TR 724:23-24)

## II.  CONCLUSIONS OF LAW

1.     Dr. Seagrave is entitled to judicial immunity.

2.     Plaintiff failed to exhaust his administrative remedies in regard to LVMC.  Ross v. Bernalillo County, 365 F.3d 1181 (10th Cir. 2004).

3.     Under the PLRA, "no federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injuries while in custody without a prior showing of physical injury."  42 U.S.C. § 1997(e).  Plaintiff's emotional distress damages based on his § 1983 suit "cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms."  Perkins v. Kansas Department of Corrections, 165

F.3d 803, 807 (10th Cir. 1999).  In this case, Plaintiff's own testimony, the testimony of Carmela Montoya, investigator at Las Vegas Medical Center, and the photographs taken in the days immediately following the incident on September 2, demonstrate conclusively that Plaintiff did not have any real physical injury, nor can Plaintiff prove that he suffered any injuries during the September 8 incident.

4.      The LVMC Defendants did not employ excessive force in taking Plaintiff to STU on September 1, 1998.

5.      The LVMC Defendants did not touch Plaintiff during the September 8, 1998, struggle to remove Plaintiff from the LVMC commode.  Consequently, Defendants did not employ excessive force as to these incidents.

6.      Even if the LVMC Defendants did apply force on September 1, 1998, it was objectively reasonable under the circumstances and they entitled to qualified immunity.

7.      Dr. Seagrave is entitled to judicial immunity for his acts.

### III.  CONCLUSION

For the reasons stated above, all of the Plaintiffs' claims, whether specifically addressed or not, are meritless.  Judgment shall be entered against Plaintiff.

Respectfully Submitted,

KELEHER & McLEOD, P.A.


BY: _____
        Sean Olivas
        P.O. Box AA
        Albuquerque, New Mexico 87103
        (505) 346-4646
        Attorneys for Defendants

I hereby certify that a copy of
the foregoing was hand delivered
to the following on June 30, 2005:

*Plaintiff pro se,*

John Lester Salazar
1600 Escalante SW
Albuquerque, NM  87104
(505) 247-8370

*Attorneys for Lieutenant Bell and
Lieutenant Iverson,*

Patrick Allen
Yenson, Lynn, Allen & Wosick, PC
4908 Alameda Blvd. NE
Albuquerque, NM  87113-1736
(505) 266-3995

_____
Sean Olivas

JLS9650:3594-100